IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NATHON BROWN** and **SEAN TRUMP**, <br><br> Plaintiffs, <br><br> v. <br><br> **NW PERMANENTE, P.C., d/b/a PERMANENTE MEDICINE** and **KAISER PERMANENTE**, <br><br> Defendants. | Case No. 3:22-cv-986-SI <br><br> **OPINION AND ORDER** |

Caroline Janzen, JANZEN LEGAL SERVICES LLC, 4550 SW Hall Boulevard, Beaverton, Oregon 97005. Of Attorney for Plaintiffs.

Jeanne F. Loftis and Alexander H. Hill, BULLIVANT HOUSER BAILEY PC, One SW Columbia Street, Suite 800, Portland, Oregon, 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Nathon Brown and Sean Trump are healthcare professionals who worked as cardiac perfusionists for Defendant Northwest Permanente, P.C. (NW Permanente). A cardiac perfusionist is responsible for operating extracorporeal circulation equipment, such as a heart–lung machine, during an open-heart surgery or other medical procedure in which it is necessary artificially to support or temporarily replace a patient's circulatory or respiratory function. Thus, a perfusionist must be physically present in the operating room next to the patient and operating

PAGE 1 – OPINION AND ORDER

staff. Plaintiffs sought and received from NW Permanente a religious exemption from Oregon's COVID-19 vaccination mandate for healthcare providers and staff. Although NW Permanente granted an exemption to each Plaintiff, it placed Plaintiffs on unpaid administrative leave and ultimately terminated Plaintiffs' employment on or about December 15, 2021, after Plaintiffs declined to be vaccinated against COVID-19.

In this lawsuit, Plaintiffs allege unlawful employment discrimination based on their religious beliefs, in violation of both state and federal law, Or. Rev. Stat. (ORS) § 659A.030 and Title VII, 42 U.S.C. § 2000e-2(a), respectively. Plaintiffs also allege common law wrongful termination and invasion of privacy. Before the Court is NW Permanente's motion to dismiss all claims. Among other things, NW Permanente argues that no reasonable accommodation of Plaintiffs' religious beliefs against receiving a COVID-19 vaccination could be made without causing undue hardship to NW Permanente.[1]

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

---

[1] Plaintiffs also assert that NW Permanente does business as "Permanente Medicine." In addition, Plaintiffs name as a Defendant Kaiser Permanente. In Defendants' motion to dismiss, NW Permanente states that it does not do business as anything but NW Permanente, P.C., and that "Kaiser Permanente," properly called "Kaiser Foundation Health Plan" (Kaiser), is a distinct entity with no employment relationship to the Plaintiffs. Plaintiffs did not respond to these arguments and thus have "effectively abandoned" their claims against these Defendants. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d 843, 845-46 (C.D. Cal. 2021) ("Plaintiff also did not oppose and, thus, concedes, Defendants' argument that because Allstate Insurance was not a party to the insurance policy at issue in this action it was improperly named and should be dismissed."). Accordingly, the Court dismisses Defendants Permanente Medicine and Kaiser from this action.

allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued Executive Order 21-29 (the EO). In the EO, the Governor explained that the summer surge in COVID-19 infections "is imperiling the state health system's ability to manage not just

COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and added that "employer vaccination requirements have become an important tool" for managing the surge. The EO required that state executive-branch employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration (FDA) approves a COVID-19 vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability, qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health Authority (OHA) adopted similar vaccination rules. One of those rules, then-codified at Oregon Administrative Rule (OAR) 333-019-1010, is known as the "Healthcare Order."[2] Originally adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare Order stated:

> Healthcare providers and healthcare staff have contact with multiple patients over the course of a typical day and week, including providers that provide care for people in their homes. Individuals cared for in these settings are more likely than the general public to have conditions that put them at risk for complications due to COVID-19. COVID-19 variants are running through the state's unvaccinated population and causing an increase in breakthrough cases for those who are fully vaccinated. This rule is necessary to help control COVID-19, protect patients, and to protect the state's healthcare workforce.

OAR 333-019-1010(1). Based on these concerns, the Healthcare Order provided that after October 18, 2021, "Health care providers and healthcare staff may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided

---

[2] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective November 6, 2023.

documentation of a medical or religious exception." OAR 333-019-1010(3)(a).[3] In addition, OAR 333-019-1010(4) stated:

> Employers of healthcare providers or healthcare staff, contractors and responsible parties who grant a medical or religious exception to the vaccination requirement in this rule must take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19.

OAR 333-019-1010(4) (emphasis added).

---

[3] The terms "healthcare providers and healthcare staff" were defined as:

> individuals, paid and unpaid, working, learning, studying, assisting, observing or volunteering in a healthcare setting providing direct patient or resident care or who have the potential for direct or indirect exposure to patients, residents, or infectious materials, and includes but is not limited to any individual licensed by a health regulatory board as that is defined in ORS 676.160, unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(f)(A). "Healthcare setting" was defined as:

> any place where health care, including physical or behavioral health care[,] is delivered and includes, but is not limited to any health care facility or agency licensed under ORS chapter 441 or 443, such as hospitals, ambulatory surgical centers, birthing centers, special inpatient care facilities, long-term acute care facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, ambulances), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

OAR 333-019-1010(2)(g)(A).

PAGE 5 – OPINION AND ORDER

In late 2021, the United States Secretary of Health and Human Services (the Secretary), who administers the Medicare and Medicaid programs, issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions and did not cover staff who teleworked full-time. *Id.*, at 61571-72. A facility's failure to comply with the vaccination requirement may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id.*, at 61574. As explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (citing 86 Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease. The Secretary of Health and Human Services determined that a COVID-19 vaccine mandate will substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients. 86 Fed. Reg. 61557-61558. He accordingly concluded that a vaccine mandate is "necessary to promote and protect patient health and safety" in the face of the ongoing pandemic. *Id.*, at 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement. 88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

## DISCUSSION

**A. Plaintiffs' Claims of Religious Discrimination in Employment**

    **1. Undue Hardship**

Plaintiffs' First Claim is brought under Oregon's religious discrimination employment law, ORS § 659A.030. Plaintiffs' Second Claim is brought under Title VII of the Civil Rights Act of Act, § 2000e-2(a)(1). Courts analyze claims for religious discrimination under ORS § 659A.030 and Title VII together. *See Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) ("Because [ORS] 659A.030 is modeled after Title VII, plaintiff's state law discrimination claim can be analyzed together with her federal discrimination claim.").

    **a. Legal Framework**

In Title VII of the Civil Rights Act of 1964, Congress made it unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court recently explained that Title VII, as originally enacted, did not spell out what it meant by discrimination "because of . . . religion," but the Equal Employment Opportunity Commission (EEOC) soon "interpreted that provision to mean that employers were sometimes required to 'accommodate' the 'reasonable religious needs of employees.'" *Groff v. DeJoy*, 600 U.S. 447, 457 (2023) (quoting 29 C.F.R. § 1605.1(a)(2) (1967)). The EEOC then adopted regulations that "obligated employers 'to make reasonable accommodations to the religious needs of employees' whenever that would not work an 'undue hardship on the conduct of the employer's business.'" *Id.* (quoting 29 C.F.R. § 1605.1 (1968)).

In 1970, the Sixth Circuit held that Title VII as then written did not require an employer "to accede to or accommodate" an employee's religious practice because that "would raise

grave" Establishment Clause questions. *Dewey v. Reynolds Metals Co*., 429 F.2d 324, 334 (6th Cir. 1968), *aff'd by an equally divided court*, 402 U.S. 689 (1971). Responding to *Dewey* and another similar decision, Congress amended Title VII in 1972 to provide:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j); *Groff*, 600 U.S. at 458.

In *Groff*, the Supreme Court also clarified what Title VII requires in this area. As explained by the Court, "showing 'more than a de minimis cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII." *Groff*, 600 U.S. at 468. Instead, when an employer asserts undue hardship based on cost, the employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. Further, "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470-71 (cleaned up).

      b. **Application**

In their Complaint, Plaintiffs allege:

> It would not have been an undue hardship to have allowed Plaintiffs to continue working with PPE [personal protection equipment], regular testing, and other measures to protect against the spread of COVID-19, as was done for the nearly two years before the imposition of the COVID-19 vaccine mandate.

EFC 1, ¶ 34 (Compl.). In support of their motion to dismiss, Defendants reply: "[I]t is evident *from the four corners of the Complaint* that to accommodate Plaintiffs and return them to work would be an undue hardship to Defendant." ECF 15, at 6 (emphasis added). It is certainly

PAGE 8 – OPINION AND ORDER

possible that this Court may reach the conclusion—at the appropriate stage of the litigation based on an appropriate factual record—that accommodating Plaintiffs would cause an undue hardship to NW Permanente. But that is not "evident from the four corners of the Complaint." As noted, a court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79. Thus, the Court may properly disregard Plaintiffs' conclusory assertion that Defendants could have accommodated their religious beliefs without incurring undue hardship. In addition, the absence of an undue hardship on a defendant is not an essential element of a plaintiff's claim under Title VII; it is an affirmative defense.

The Ninth Circuit has explained that "[o]rdinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quoting *Lusnak*). In *Monex*, the Ninth Circuit added that "we can consider an affirmative defense on a motion to dismiss when there is some obvious bar to securing relief on the face of the complaint." *Id.* (quotation marks omitted). "In other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *Id.* (emphasis in original). As noted, Plaintiffs allege in their Complaint that it would not have been an undue hardship to have allowed Plaintiffs to continue working. Even if the Court were to disregard that allegation as merely conclusory, Plaintiffs's Complaint does not *itself* establish the affirmative defense of undue hardship.

This does not mean, however, that Defendants must submit to time-consuming and expensive discovery before filing a motion for summary judgment. The Court does not limit the parties to a single motion for summary judgment; nor does the Court require a party to wait until

discovery has closed, if that party believes it has a meritorious argument for summary judgment.[4] Under the facts and allegations here, the Court will consider the merits of any argument based on "undue hardship" after a well-supported motion for summary judgment has been filed. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's First and Second Claims under Rule 12(b)(6).

### 2. Reasonable Accommodation

Defendants also contend that putting Plaintiffs on unpaid leave does not qualify as an adverse employment action. If an action "materially affects the compensation, terms, conditions, or privileges of employment," it is an adverse employment action. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up). Defendants do not dispute that termination is an adverse employment action. Unpaid leave would also to fall within the standard in *Davis* as it affects, at minimum, the "compensation" of employment. Defendants argue that unpaid leave should be considered a reasonable accommodation rather than an adverse employment action. A reasonable accommodation, however, cannot be a materially adverse employment action. *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1094 (E.D. Cal. 2017). A "reasonable"

---

[4] Although Rule 56(d) of the Federal Rules of Civil Procedure provides a party opposing a motion for summary judgment with certain procedural rights, which may increase the cost or delay to the movant to some extent, those rights are available only if the nonmovant shows by affidavit or declaration "for specified reasons" why "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Further, when a motion for summary judgment is supported by expert declarations and the nonmovant files contrary declarations, that is *not necessarily* the end of the matter at summary judgment. As part of a court's summary judgment determination, either party may file a motion to exclude an opponent's proffered expert testimony under Rule 702 of the Federal Rules of Evidence. Further, "[i]t is the proponent of the expert who has the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Also, "[t]o carry out its gatekeeping role, a district court must find that an expert's testimony is reliable—an inquiry that focuses not on what the experts say, or their qualifications, but what basis they have for saying it. A district court cannot be silent about reliability when challenged." *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (cleaned up).

accommodation under Title VII is one that "eliminates the conflict between employment requirements and religious practices." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70 (1986). But "Congress . . . did not impose a duty on the employer to accommodate at all costs." *Id.* Thus Title VII does not require an employer to accept an employee's *preferred* accommodation. *Am. Postal Workers Union, S.F. Loc. v. Postmaster Gen.*, 781 F.2d 772, 776 (9th Cir. 1986). The Supreme Court in *Ansonia* found that unpaid leave could be a reasonable accommodation because it allows an individual to observe his religion, while requiring only that he give up compensation for days not worked. 479 U.S. at 70. *Ansonia* addressed a situation in which religious observances conflicted with assigned work schedules, and unpaid leave was necessary only for certain days. It is well established under *Ansonia* and other cases that unpaid leave can be a reasonable accommodation for a religious employee who needs to miss work for a religious holiday. *See, e.g.*, *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 315 (4th Cir. 2008).

These cases are distinguishable from Plaintiffs' situation. Plaintiffs allege that they did not receive pay or have access to facilities for more than two months of administrative leave, which ended in their termination. Compl. ¶ 13, 22. Plaintiffs also allege that they were threatened with enforcement of a non-compete clause if they attempted to gain comparable work in the area. *Id.* ¶ 14, 22. In combination, these actions allegedly decimated Plaintiffs' finances. *Id.* ¶ 15, 23 Certainly, no compensation for more than two months may have significant financial impacts that may not be considered "reasonable." *See Arizanovska v. Wal–Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012) (holding that being forced to take an unpaid leave of absence falls into the category of materially adverse employment actions that impact an employee's current wealth). Thus Plaintiffs sufficiently allege that this leave materially affected the compensation,

terms, conditions, or privileges of their employment. The Court will allow the religious discrimination claims to treat unpaid leave as an adverse employment action.

### 3. Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must allege facts sufficient to show: "(1) that he was subjected to verbal or physical conduct of a [religious] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *See Mills v. PeaceHealth*, 31 F. Supp. 3d 1099, 1115 (D. Or. 2014) (alteration in original) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)).

Plaintiffs allege that NW Permanente created a hostile environment during the time Plaintiffs were still working on site but were unvaccinated, and that Plaintiffs overheard or directly received hostile comments about unvaccinated people by other staff members. Compl. ¶ 27. Plaintiffs allege no connection between the comments about unvaccinated people and their religion. To remain unvaccinated may be a secular choice, and unvaccinated status alone does not establish any connotation of religious affiliation. Without some connection to their religion, Plaintiffs fail to allege that they faced verbal or physical conduct of a religious nature. Thus, Plaintiffs' theory of a hostile work environment fails on its face, and the Court dismisses this portion of the Complaint.

## B. Wrongful Termination

Controlling Oregon Supreme Court precedent, as interpreted by a long line of cases in this District, precludes claims for common law wrongful discharge if there is an adequate statutory remedy. The test for whether a claim for common law wrongful discharge is precluded requires a showing that either (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by

establishing an exclusive remedy. *See Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1145 (D. Or. 2013); *Draper v. Astoria Sch. Dist. No. 1C*, 995 F. Supp. 1122, 1130-31 (D. Or. 1998), *abrogated on other grounds by Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967 (9th Cir. 2003); *see also Lovell v. Sky Chefs Inc.*, 2015 WL 4488026, at *3 (D. Or. July 22, 2015) (collecting cases and discussing almost uniform agreement among the judges in this district with the reasoning in *Draper*).

This Court has repeatedly held that a wrongful discharge claim based on discrimination is preempted by adequate statutory remedies under ORS § 659A.030 and ORS § 659A.885. *See, e.g.*, *Whitley v. City of Portland*, 654 F. Supp. 2d 1194, 1224-25 (D. Or. 2009) (plaintiff's claim that she was wrongfully discharged for reporting gender discrimination and harassment was preempted by ORS § 659A.030 and ORS § 659A.885); *Gladfelder v. Pacific Courier Servs., LLC*, 2013 WL 2318840, at *2-3 (D. Or. May 28, 2013) (finding Oregon statutory law provides an adequate remedy for claims of discrimination, retaliation, and hostile work environment); *Wall v. Sentry Ins.*, 2015 WL 350683, at *2-3 (D. Or. Jan. 26, 2015) (same). ORS § 659A.885(1)-(3) provide the full range of legal and equitable remedies available under the common law for discrimination claims under ORS § 659A.030. Accordingly, because Plaintiffs have an adequate statutory remedy brought under ORS § 659A.885, Plaintiffs' claim for common law wrongful discharge is dismissed.

**C. Invasion of Privacy**

In their fourth claim for relief, Plaintiffs allege that their vaccine status was private medical information, and that NW Permanente made this status "known to the public or to a large number of people, specifically the patients and staff members the Plaintiffs interacted with regularly." Compl. ¶¶ 50-51. Plaintiffs also allege that the publication of that information "was offensive to both Plaintiffs and would have been offensive to a reasonable person." *Id.* ¶ 52.

Oregon law recognizes an invasion of privacy tort claim based on publication of private facts. *Tollefson v. Price*, 247 Or. 398, 401-02 (1967). This claim requires that "(1) the facts disclosed are private facts; (2) defendants disclosed them to the public generally or to a large number of persons; and (3) the disclosure was in a form of publicity of a highly objectionable kind." *Simpson v. Burrows*, 90 F. Supp. 2d 1108, 1125 (D. Or. 2000) (quotation marks omitted). To assess whether a disclosure is highly objectionable, courts examine "the facts alleged in the complaint . . . in the light of what would be offensive to the ordinary reasonable person." *Hamilton v. Crown Life Ins. Co.*, 246 Or. 1, 6 (1967). NW Permanente does not dispute that vaccine status is a private fact. The motion to dismiss this claim instead centers on the second and third elements of the claim.

On the second element, NW Permanente argues that "patients and staff members that Plaintiffs interacted with regularly" are not "a large number of people." ECF-1, at 14. NW Permanente points to the limited number of staff who work in their operating rooms and suggests that this "handful of people" would not satisfy Plaintiffs' burden for an invasion of privacy claim. According to NW Permanente, the allegations severely limit the number of persons to whom Plaintiffs' private information could have been published. *Id.*

NW Permanente, however, ignores Plaintiffs' allegation that the disclosure reached NW Permanente's patients. Even if the Court accepted NW Permanente's assertion that the number of staff members reached is necessarily small based on the assertions in Plaintiffs' complaint, it is unclear how many patients learned of Plaintiffs' vaccination status. The extent of the outreach is thus a factual dispute to be settled on a motion for summary judgment, not a motion to dismiss.

On the third element, NW Permanente argues that disclosure of private facts that address a legitimate concern to the public does not qualify as an actionable invasion of privacy, and that

combating the COVID-19 pandemic by vaccinating healthcare workers is a legitimate concern to the public. *See* OAR 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(1) ("It is vital to this state that healthcare providers and healthcare staff be vaccinated against COVID-19."). Even if Defendant disclosed Plaintiffs' vaccination status to a few staff members and patients, NW Permanente argues, the information was "vital" to the state of Oregon and was therefore of public concern. The Court notes, however, that information of public concern tends to fall under the realm of "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions," not medical information. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975).

The Court, nevertheless, finds that Plaintiffs fail to sufficiently plead the third element of publication of private facts. Plaintiffs fail to allege anything more than the legal conclusion that publication of their vaccination status "would have been offensive to a reasonable person." Compl. ¶ 52. Bare legal conclusions are insufficient to plead a claim. *Ashcroft*, 556 U.S. at 678–79. As discussed in a similar case in the Central District of California,

> Given COVID-19 vaccination has become a highly polarized topic, it is quite difficult to say, as a matter of law, what a "reasonable person" would find offensive in this circumstance. On the one hand, many vaccinated individuals would hardly care if their employer shared their vaccination status with colleagues, and likely are willing to share such information voluntarily. On the other hand, under certain circumstances, the Court could imagine a scenario where an unjustified, reckless, or punitive disclosure of non-vaccination status by a superior to many of an employee's colleagues, could at least raise a question of fact as to offensiveness to be resolved by a jury.
>
> Ultimately, however, the Court concludes that Plaintiff has failed to allege sufficient facts to establish that the disclosure here was highly offensive. The Court does not know any of the circumstances around the disclosure. . . . Without these details, the Complaint does not allege an egregious breach of social norms, and thus, insufficiently states a claim for invasion of privacy.

*Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *7 (C.D. Cal. Nov. 29, 2022). The court in *Ojeda* listed several details without which that plaintiff failed to allege an offensive disclosure, including the form of the disclosure, whether the plaintiff was singled out, what the defendants had promised to employees, and if the disclosure violated the defendants' own policies. *Id.* Similarly, Plaintiffs' Complaint lacks any detail about the disclosure other than that Plaintiffs heard hostile comments about unvaccinated people, which says nothing about NW Permanente's role in making information known, or what disclosures, if any, could be considered offensive. The Court thus grants NW Permanente's motion to dismiss on the invasion of privacy claim.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss, ECF 7. The Court DENIES IN PART Defendants' motion against Plaintiffs' religious discrimination claims but GRANTS the motion to dismiss to the extent that those claims are based on an alleged hostile work environment. The Court GRANTS Defendants' motion to dismiss Plaintiffs' common law claims of unlawful termination and invasion of privacy. The Court also dismisses all claims against Permanente Medicine and Kaiser Permanente. If Plaintiffs believe they can cure any of the deficiencies identified herein, Plaintiffs may file an amended complaint within two weeks of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 20th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge